**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

JAMES TAYLOR,
                Plaintiff,

    v.
                                                No. 05-CV-1316
LT. LAWRENCE; SALLY BAXTER,                    (NAM/DRH)
Nurse Administrator; and M. RELF, Captain

                Defendants.

---

**APPEARANCES:**                                **OF COUNSEL:**

JAMES TAYLOR
Plaintiff Pro Se
259 Hagen Street
Buffalo, New York 14215

HON. ANDREW M. CUOMO               SENTA B. SIUDA, ESQ.
Attorney General for the                  Assistant Attorney General
  State of New York
Attorney for Defendants
615 Erie Boulevard West
Suite 102
Syracuse, New York 13204-2455

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

Plaintiff pro se James Taylor ("Taylor"), formerly an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, three DOCS employees, violated his constitutional rights under the Fifth, Eighth, and Fourteenth Amendments. Compl. (Docket No. 1).

---

[1]This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Presently pending is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. Docket No. 18. Taylor opposes the motion. Docket Nos. 24, 25. Also pending is Taylor's motion for the appointment of counsel. Docket No. 23. For the following reasons, it is recommended that defendants' motion be granted and it is ordered that Taylor's motion be denied.

### I. Background

The facts are related herein in the light most favorable to Taylor as the nonmoving party. See subsection II(A) infra.

At all times relevant herein, Taylor was incarcerated at Mid-State Correctional Facility ("Mid-State"). DOCS Chronological History Display (Docket No. 18, pt. 6, Ex. E) at 1. On June 16, 2005, defendant Lawrence, a Lieutenant, moved Taylor from Building 27 to Building 4, located farther from the Mid-State medical unit, against medical orders. Compl. at ¶ 2. According to Lawrence, "[Taylor] was moved for security reasons related to his failure to meet the high cleanliness standards expected of inmates." Lawrence Aff. (Docket No. 18, pt. 6) at ¶ 3. Due to the pain and swelling in Taylor's knees, he was physically unable to walk back to Building 27 to receive his mental health medication. Compl. at ¶ 2. On February 17, 2005, Taylor spoke to his mental health counselor complaining of the mental and physical ramifications of the move and was advised that he had been transferred for security reasons. Id.

On February 21, 2005, Taylor filed an inmate grievance, through the Inmate Grievance

2

Program ("IGP")[2] asserting that he had been improperly transferred from Building 27 and, as a result of his severe knee problems, was unable to obtain his mental health medication from Building 27.[3]  Docket No. 18, pt. 6, Ex. B at 1.  On February 25, 2005, the IGRC issued a decision stating that Taylor "was moved due to security reasons" because (1) the medical permit Taylor was issued was invalid as it was not reviewed by security staff before issuance,[4] (2) it was not medically necessary to have Taylor housed in a specific unit, and (3) Taylor had been offered and refused medication and braces for his knees.  Docket No. 18, pt. 6, Ex. B at 2 & Ex. C at 12 (outlining proper procedure for issuing a valid medical excuse).  Taylor contends that the medical treatment he received was not adequate as the medical staff required him to walk to the medical unit three times a day to receive the medication, which made him sluggish, and the knee brace that he was provided was too small and needed to be returned.  Compl. at ¶ 6.  On April 6, 2005, CORC denied Taylor's appeal unanimously affirming the IGRC's decision.  Docket No. 18, pt. 6, Ex. B at 3.

Taylor's "physician had petitioned to have [him] transferred to a facility that could better accommodate his medical need and, in the interim, asked that [he] be permitted to stay in

---

[2] "The IGP is a three-step process that requires an inmate to: (1) file a grievance with the IGRC [Inmate Grievance Resolution Committee]; (2) appeal to the superintendent within four working days of receiving the IGRC's written response, and (3) appeal to the CORC [Central Office Review Committee] . . . within four working days of receipt of the superintendent's written response."  Abney v. McGinnis, 380 F.3d 663, 668 (2d Cir. 2004) (internal citations omitted).

[3] Taylor also corresponded with defendant Relf, a Captain, who indicated that because Taylor had commenced the grievance process, the situation surrounding his housing would be handled administratively and not by Relf.  Docket No. 18, pt. 5, Ex. 2.

[4] Taylor alleges that defendants Baxter and Relf conspired against him and stated that the permit was invalid despite their knowledge that Taylor had the medical excuses and had previously used it on multiple occasions.  Docket No. 25.

[B]uilding 27." Lawrence Aff. at ¶ 5.  Lawrence approved the request with the "understanding that [Taylor] would be transferred in a couple of weeks."  Id.  On March 22, 2005, while Taylor was housed in Building 27, he received a misbehavior report for failing to keep his bed and locker area in compliance with the cleanliness standards of the unit. Docket No. 18, pt. 6, Ex. D at 1; Lawrence Aff. at ¶ 6; Compl. at ¶ 8.  Upon returning to his cell, Taylor denied the allegations in the report as he stated that "no inmate could leave the unit [as he had] without his area [first] being in compliance."  Compl. at ¶ 8. Additionally, in the misbehavior report, Officer Jones[5] asserted that the previous day he had counseled Taylor "about his failure to keep his bed area in compliance . . . ."  Docket No. 18, pt. 6, Ex. D at 1.  Taylor contends that this conversation never occurred.  Docket No. 25.  At the hearing, Taylor was found guilty of violating two rules and was "penalized with [fifteen] days keeplock, and a corresponding loss of packages, commissary and phone privileges. However, the penalty was suspended and deferred for 90 days, and was never served by [Taylor]."  Lawrence Aff. at ¶ 7.

Taylor was released from DOCS custody on October 25, 2005.  DOCS Chronological History Display at 1.  This action followed.

## II. Discussion

In his complaint, Taylor alleges that defendants violated his (1) Fifth Amendment rights, (2) Eighth Amendment rights when defendants were deliberately indifferent to Taylor's serious medical needs, and (3) Fourteenth Amendment due process rights by filing a false

---

[5] Officer Jones authored the misbehavior report, but he is not a named defendant. Docket No. 18, pt. 6, Ex. D at 1.

4

misbehavior report subjecting him to keeplock[6] and a loss of privileges.  Additionally, liberally construing Taylor's claims, he also contends that (1) Baxter and Relf conspired against him by denying the validity of his medical excuse, and (2) Lawrence retaliated against him by filing the false misbehavior report.  Defendants move for summary judgment as to all claims.

### A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party bears the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact could

---

[6]"Keeplock is a form of disciplinary confinement segregating an inmate from other inmates and depriving him of participation in normal prison activities." Green v. Bauvi, 46 F.3d 189, 192 (2d Cir. 1995); N.Y. Comp. Codes R. & Regs. tit. 7, § 301.6 (1995).

find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude. Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. Anderson, 477 U.S. at 247-48.

**B. Fifth Amendment**

Taylor includes in his complaint a claim that defendants' conduct violated his rights under the Fifth Amendment. The Fifth Amendment pertains to criminal charges and prohibits the federal government from violating a person's due process rights. See Public Utilities Comm'n v. Pollak, 343 U.S. 451, 461 (1952); Am. Bankers Mortgage v. Fed. Home Loan Mortgage, 75 F.3d 1401, 1406 (9th Cir. 1996); Birdsall v. City of Hartford, 249 F. Supp. 2d 163, 170 (D. Conn. 2003). The claims asserted here concern events at a New York State facility allegedly committed by state employees. Thus, the Fifth Amendment has no application to the allegations of Taylor's complaint and his Fifth Amendment claim should, therefore, be dismissed.

**C. Eighth Amendment**

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. CONST. amend. VIII. This includes the provision of medical care. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (citations omitted). A prisoner advancing an Eighth Amendment claim for denial of medical care must allege and prove deliberate indifference to a serious medical need. Wilson v. Seiter, 501 U.S. 294, 297 (1991); Hathaway, 37 F.3d at 66. More than negligence is required "but less than conduct undertaken for the very purpose of causing harm." Hathaway, 37 F.3d at 66. The test for a § 1983 claim is twofold. First, the prisoner must show that there was a sufficiently serious medical need. Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998). Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm. Id. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Farmer v. Brennan, 511 U.S. 825, 844 (1994).

"'Because society does not expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim. Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003)(quoting Hudson v. McMillian, 503 U.S. 1,9 (1992)). Because there is no distinct litmus test, a serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." Brock v. Wright, 315 F.3d

7

158, 162-63 (2d Cir. 2003)(citing Chance, 143 F.3d at 702). The severity of the denial of care should also be judged within the context of the surrounding facts and circumstances of the case. Smith, 316 F.3d at 185.

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs." Chance, 143 F.3d at 702. Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104, (1976). "Mere disagreement over proper treatment does not create a constitutional claim," as long as the treatment was adequate. Id. at 703. Thus, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists . . . are not adequate grounds for a § 1983 claim." Magee v. Childs, No. 04-CV-1089 (GLS/RFT), 2006 WL 681223, at *4 (N.D.N.Y. Feb. 27, 2006). Furthermore, allegations of negligence or malpractice do not constitute deliberate indifference unless the malpractice involved culpable recklessness. Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).

Taylor first argues that placing him in Building 4 was deliberately indifferent to his severe knee ailments. However, Taylor has not proven that his knee injury was a serious medical need. Generally, knee injuries have been "insufficient to trigger Eighth Amendment protection and support a deliberate indifference claim." Johnson v. Wright, 477 F. Supp. 2d 572, 575 (W.D.N.Y. 2007) (holding that a prisoner's torn meniscus suffered in a basketball injury was not a serious medical need) (quoting Moody v. Pickles, No. 03-CV-850 (DEP), 2006 WL 2645124, at *6 (N.D.N.Y. Sept. 13, 2006) (holding that a "medial meniscal tear, with joint effusion" which did not render plaintiff immobile was not a serious medical need);

see also Williamson v. Goord, No. 02-CV-521(GLS/GHL), 2006 WL 1977438, at *9,14,16 (N.D.N.Y. July 11, 2006) (holding that a prisoner's knee injuries including arthrosis, degenerative joint disease, and partially torn anterior cruciate ligament ("ACL"), did not constitute "death or degeneration, or [constitute the appropriate level of] extreme pain [contemplated by] the law").

This case is no different. While Taylor alleges swelling and pain, he does not claim an inability to ambulate or any other degenerative condition. Thus, the allegations of pain and swelling, without more, do not constitute a serious medical need in these circumstances. Therefore, Taylor's contentions concerning his knee injuries fail the first prong under the Eighth Amendment.

Additionally, even if Taylor could prove that his knee condition was a serious medical need, he cannot prove that defendants were deliberately indifferent to it. Taylor seems to allege that defendants have mischaracterized his refusal to accept medication, arguing that this was an inappropriate basis to label Taylor a security risk. However, there is no dispute that Taylor did not want to be burdened with reporting to the medical unit three times per day to receive medication. Compl. at ¶ 6. Additionally, while it is unfortunate that Taylor felt groggy after taking the medication, defendants had no control over a medication's side effects on the patient. Id. Defendants could only treat Taylor's symptoms. The fact that this medication, in Taylor's view, was ineffective and that he disagreed with the course of treatment does not rise to a level of deliberate indifference.

Furthermore, defendants provided Taylor with a knee brace to alleviate his pain. Id. The record only indicates that the brace was too small and was returned. Id. It does not insinuate that defendants intentionally delayed or denied Taylor any additional access to an

9

alternate brace. Taylor's conclusory allegations that defendants were deliberately indifferent in this regard, without more, are insufficient to sustain a constitutional claim.

Taylor also alleges that all defendants had knowledge of his medical excuse form and intentionally transferred him to Building 4 despite his need to remain near the medical unit in Building 27. The IGP determined that "due to a clerical error, [Taylor's] permit was not valid, in so much as [it] was not reviewed by security before issuing." Docket No. 18, pt. 6, Ex. B at 2. This resulted in Taylor being termed a security risk, transferred to a building which was farther away, and forced to walk, against medical advice, to obtain his medication. While this clerical oversight may well have been negligent, it does not rise to a level of intentional interference or denial. This is further evidenced by the fact that when Taylor's physician petitioned to have Taylor moved because of his medical conditions, Lawrence immediately complied with the request. Lawrence Aff. at ¶ 5. The regulation determining that medical excuses were to be approved by security was important to penological safety[7] requiring deference to defendants' rules. Nothing in the record refutes the conclusion that defendants' refusal to honor Taylor's medical excuse because it was not properly authenticated by security was at worst an honest mistake and not deliberate indifference.

---

[7]"[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of . . . convicted prisoners . . . ." Bell v. Wolfish, 441 U.S. 520, 546 (1979). Prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Id. at 547; see also Pell v. Procunier, 417 U.S. 817, 827 (1974) ("in the absence of substantial evidence in the record to indicate that the [prison] officials have exaggerated their response to these [security] considerations, courts should ordinarily defer to their expert judgment in such matters.").

Taylor also alleges that due to the move, he was unable to report to Building 27 to receive his mental health medications which also constituted deliberate indifference to a serious medical need.  "Treatment of mental disorders of mentally disturbed inmates is . . . a serious medical need" as contemplated by Estelle.  Guglielmoni v. Alexander, 583 F. Supp. 821, 826 (D. Conn. 1984).  Thus, because Taylor was receiving medication for a mental health condition, he has presumptively alleged facts sufficient to provide relief as to whether he suffered a serious medical need.

However, despite this serious medical need, as discussed supra, Taylor has not alleged facts sufficient to prove deliberate indifference.  Defendants' actions were, at worst, an unforseen consequence of a legitimate penological regulation and a clerical oversight.  There is no dispute that this was neither an intentional interference nor deliberate denial of treatment.

Accordingly, defendants' motion for summary judgment on this ground should be granted.

### D. False Misbehavior Report

Liberally construing Taylor's complaint, he alleges that Lawrence and Jones submitted a false misbehavior report resulting in an unwarranted keeplock punishment.  Compl. at ¶ 9.

### 1. Due Process

 An inmate asserting a violation of his or her right to due process must establish the existence of a protected interest in life, liberty, or property. See Perry v. McDonald, 280

F.3d 159, 173 (2d Cir. 2001).  To establish a protected liberty interest, a prisoner must satisfy the standard set forth in Sandin v. Conner, 515 U.S. 472, 483-84 (1995). This standard requires a prisoner to establish that the deprivation was atypical and significant in relation to ordinary prison life. Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir.1999); Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir.1996).

   A "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986)).  "There must be more, such as retaliation against the prisoner for exercising a constitutional right." Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997) (citing Franco v. Kelly, 854 F.2d 584, 588-90 (2d Cir. 1988)).  In this case, as discussed infra in subsection II(C)(2), Taylor has not established a retaliation claim against defendants.  Additionally, Taylor also has failed to establish any other constitutional claims.  Taylor has only asserted conclusory allegations that he was denied due process.  This is insufficient.  Moreover, even assuming Taylor has offered facts to demonstrate a false accusation, he must still prove an additional element.  Because Taylor has not shown any of his other constitutional claims, his due process claim must also fail.

   Therefore, defendants' motion as to the false misbehavior report claim should be granted.

### 2. Retaliation

Liberally construing Taylor's claim, it appears that he attempts to assert a claim for retaliation against Lawrence.  In order to state an actionable claim for retaliation, a plaintiff

must first allege that the plaintiff's conduct was constitutionally protected and that this protected conduct was a substantial factor that caused the adverse action against plaintiff. Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996). However, courts must view retaliation claims with care and skepticism to avoid judicial intrusion into prison administration matters. Id. Conclusory allegations alone are insufficient. Id. (citing Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983) (explaining that "claim[s] supported by specific and detailed factual allegations . . . ought usually be pursued with full discovery.")).

Here, Taylor has failed to allege or prove that he was engaged in a constitutionally protected activity when the allegedly false misbehavior report was filed. Moreover, there is no cognizable link between any alleged constitutionally protected actions by Taylor and the misbehavior report. Thus, Taylor's contentions fail to state an actionable retaliation claim.

Therefore, it is recommended that defendants' motion on this ground be granted.

### E.. Conspiracy

Baxter and Relf assert that Taylor has failed to state a cause of action against them. Taylor contends that these defendants participated in a conspiracy to suppress the validity of his medical excuse. Docket No. 25.

"Section 1985 prohibits conspiracies to interfere with civil rights." Davila v. Secure Pharmacy Plus, 329 F. Supp. 2d 311, 316 (D. Conn. 2004). To state a claim for relief under § 1985(3), a plaintiff must show:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or

deprived of any right of a citizen of the United States.

United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott, 463 U.S. 825, 828-29 (1983); see also Iqbal v. Hasty, 490 F.3d 143, 176 (2d Cir. 2007).  In order to demonstrate a conspiracy existed, "the plaintiff must prove a mutual understanding or meeting of the minds to violate [his or] her civil rights." Salgado v. City of N.Y., No. 00-CV-3667 (RWS), 2001 WL 290051, at *8 (S.D.N.Y. Mar. 26, 2001) (citations omitted).  "In addition, the conspiracy must be motivated by some class-based animus." Iqbal, 490 F.3d at 176 (citations omitted).

Here, Taylor only asserts conclusory statements relating to an alleged conspiracy.  This is insufficient.  See X-Men Sec., Inc. v. Pataki, 196 F.3d 56, 71 (2d Cir. 1999).  Additionally, there are no facts relating to an agreement between defendants, the purpose of their alleged conspiracy, or an intent to deprive Taylor of privileges of the law.  Even viewing every fact in the light most favorable to Taylor, no such an animus is present in the record.

Therefore, defendants' motion on this ground should be granted .

### F. Qualified Immunity

Defendants also contend that they are entitled to qualified immunity.  Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003).  However, even if the constitutional privileges "are clearly established, a

government actor may still be shielded by qualified immunity if it was objectively reasonable for the . . . official to believe that his [or her] acts did not violate those rights." Smith v. City of Albany, No. 03-CV-1157, 2006 WL 839525, at *16 (N.D.N.Y. Mar. 27, 2006) (quoting Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)).  A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230.

In this case, the second prong of the inquiry need not be reached because, as discussed supra, accepting all of Taylor's allegations as true, he has not shown that defendants violated his constitutional rights.  In the alternative, therefore, defendants' motion on this ground should be granted.

### III. Taylor's Motion for Appointment of Counsel

In Terminate Control Corp. v. Horowitz, 28 F.3d 1335 (2d Cir. 1994), the Second Circuit held that in ruling on a motion for appointment of counsel, a court should first determine whether the applicant's position seems likely to be of substance.  As discussed above, Taylor's claims all appear subject to judgment in favor of defendants.  Accordingly, as Taylor's position in this case lacks substantial merit, his motion for appointment of counsel is denied.

## IV.  Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that defendants' motion for summary judgment (Docket No. 18) be **GRANTED** in all respects and that the complaint be dismissed as to all claims and all defendants; and

**IT IS ORDERED** that Taylor's motion for the appointment of counsel (Docket No. 23) is **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: May 12, 2008
       Albany, New York

_____
United States Magistrate Judge